JUSTICE SOLOMON delivered the opinion of the Court.
**550 N.J.S.A. 40:55D-10.5, a section of the Municipal Land Use Law, provides that "development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development." That rule is known as the Time of Application Rule (TOA Rule), and this appeal turns on whether an incomplete application triggers the TOA Rule's protections.
Plaintiff Dunbar Homes, Inc., (Dunbar) sought to build garden apartments in Franklin Township (Township), and applied for site plan approval and a "conditional use special reasons" variance **551 pursuant to N.J.S.A. 40:55D-70(d)(3) ((d)(3) variance).[1] Dunbar's application lacked a number of documents required under the Township's Zoning and Subdivision Ordinance (Ordinance). *145 One day after Dunbar submitted its application for site plan approval and a (d)(3) variance, the Township formally adopted an ordinance that, as Dunbar knew, had been introduced weeks earlier. That ordinance eliminated garden apartments as a permitted use. Thereafter, the Township notified Dunbar that it would have to apply for a "restricted use special reasons" variance under N.J.S.A. 40:55D-70(d)(1) ((d)(1) variance).[2]
Dunbar appealed the Township's decision to the Zoning Board of Adjustment (Board), arguing that the application was "complete" upon submission and was therefore protected by the TOA Rule. The Board denied the appeal. The trial court reversed the Board, finding that the TOA Rule applied because the contents of the application permitted the Township to conduct a "meaningful review."
The Township appealed the trial court's decision and the Appellate Division reversed. We now affirm the Appellate Division's determination. The plain language of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, defines an "application for development" as "the application form and all accompanying documents required by ordinance." N.J.S.A. 40:55D-3. Because Dunbar's application lacked many of the documents required by the Ordinance, the application was not complete upon submission and does not benefit from the TOA Rule.
**552 I.
A.
Dunbar is a land developer and residential builder that owns a 276-unit garden apartment complex in the Township's General Business Zone (GB-Zone). Dunbar also owns 6.93 acres adjacent to the complex. Over the summer of 2013, Dunbar sought approval to develop an additional fifty-five garden apartments, which at that time were a permitted conditional use in the GB-Zone. As such, construction of the additional apartments required a (d)(3) variance, and submission of an application for site plan approval and a (d)(3) variance.
On May 28, 2013, the Township introduced and scheduled a public hearing for an ordinance that eliminated garden apartments as a permitted conditional use in the GB-Zone. The Township adopted the new ordinance on July 16, 2013, and it became effective on August 5, 2013.
On June 28, 2013, eighteen days before it adopted its new zoning ordinance, the Township advised Dunbar of the potential GB-Zone change. On July 15, 2013--the day before the Township adopted its new ordinance-Dunbar submitted an application to the Planning Board for site plan approval and a (d)(3) variance to build the additional apartments in the GB-Zone.
On August 7, 2013, two days after the Township's new zoning ordinance eliminated garden apartments as a conditional use in the GB-Zone, a Township zoning officer emailed Dunbar to indicate that its application was incomplete. The zoning officer provided a list of items "needed for completeness" and instructed Dunbar that it would need to apply for a (d)(1) variance instead of a (d)(3) variance because "garden apartments are not permitted in the GB Zone." Since a (d)(3) variance need not *146 meet the stringent standards required for a (d)(1) variance,[3] approval of Dunbar's application for a (d)(1) variance was less likely. See **553 Medici v. BPR Co., 107 N.J. 1, 9-18, 526 A.2d 109 (1987). Dunbar later submitted the additional materials, and on October 29, 2013, its application for site plan approval and (d)(1) variance was certified as "complete."
B.
Dunbar filed a notice of appeal to the Board claiming that the TOA Rule preserved, for the purpose of its site plan application, the zoning ordinance in place at the time Dunbar submitted the application. In its appeal to the Board, Dunbar did not dispute the zoning officer's deficiency findings.
At a public hearing on the application, Dunbar presented the testimony of two experts. First, John Chadwick, a professional planner, conceded that Dunbar's application lacked items required by the Ordinance for site plan or variance approval but opined that despite those deficiencies Dunbar's application was sufficient. Second, Dunbar presented the testimony of Robert Washburn, an expert in New Jersey land use law. Washburn stated that a completeness requirement would frustrate the purpose of the MLUL, and that the Ordinance was invalid because it required a "complete application." Washburn asserted that the MLUL required an "application for development" rather than a "complete application for development" to trigger the protections of the TOA Rule.
The Township argued that, pursuant to Section 112-4 of the Ordinance, an application for development had to be "complete"
**554 for the TOA Rule to apply. The Board agreed with the Township's view and unanimously denied Dunbar's appeal. The Board determined that Dunbar's initial application was not an "application for development" as defined by the Ordinance because it did not include the materials required by the Ordinance. Thus, because the application was not deemed "complete" until after the effective date of the ordinance prohibiting garden apartments in the GB-Zone, the TOA Rule did not shield Dunbar from Franklin's new zoning ordinance, and Dunbar was required to obtain a (d)(1) variance.
C.
Dunbar filed a complaint in lieu of prerogative writs against the Board and the Township, asserting that the Board's decision was arbitrary and capricious or unreasonable. Dunbar also claimed that the Township's denial of the application was invalid and ultra vires because it conflicted with the MLUL's TOA Rule. The trial court agreed and reversed the Board.
In an oral opinion, the trial court considered the legislative history of the TOA Rule, determining that the Legislature's omission of the word "complete," which was included in a proposed 2004 version of *147 the statute, revealed the Legislature's intent not to require a "complete" application to trigger the TOA Rule. Thus, the court reasoned, the TOA Rule's use of the word "application" without reference to "completeness" suggests the need for a "determination of what's an application independent as to whether there was a formal declaration of completeness."
The court read the TOA Rule in conjunction with N.J.S.A. 40:55D-10.3 to find that a municipal land use ordinance must set forth a checklist to provide a "clear understanding[ ] of what is required" for submission. It ruled that absent such a checklist, the TOA Rule should apply "if the applicant provide[s] enough information ... so that a meaningful review of the application can commence." The trial court then reviewed Dunbar's original submission under this standard, concluding that "there was enough submitted to functionally begin a review" of Dunbar's application.
**555 Thus, the court found that Dunbar was protected by the TOA Rule and could therefore pursue a variance for the additional apartments under N.J.S.A. 40:55D-70(d)(3).
The Township appealed the ruling to the Appellate Division, which reversed the trial court. The panel rejected the trial court's "enough information for meaningful review" standard, holding that courts must instead apply the definition of "application for development" adopted by the Legislature in the definitions section of the MLUL. Thus, the panel held that "[t]he benchmark for determining whether documents are required for the submission to constitute an application for development ... is whether they are specifically required by ordinance." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 448 N.J. Super. 583, 602-03, 154 A.3d 710 (App. Div. 2017) (citing N.J.S.A. 40:55D-10.3 ). Applying that standard, the panel ruled that Dunbar's application failed to include documents required by the Ordinance. Therefore, because Dunbar's submission did not constitute an "application for development" within the meaning of the MLUL, the panel concluded that the Board's decision not to extend the protection of the TOA Rule to Dunbar's submission was not arbitrary and capricious or unreasonable.
Dunbar petitioned for certification, which this Court granted. 233 N.J. 127 (2017). We also granted the following motions for leave to appear as amicus curiae: a joint motion by the New Jersey Builders Association, NAIOP New Jersey Chapter, Inc., and the International Council of Shopping Centers (collectively, NAIOP); a joint motion by the New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys (collectively, NJLM); and an individual motion by the New Jersey State Bar Association (NJSBA).
II.
A.
Dunbar claims that the appellate panel acknowledged that the MLUL does not require completeness to apply the TOA Rule, yet **556 created a standard that essentially mandates "the submission of a 100% complete application." Dunbar also argues that the appellate panel's standard would foster the very "municipal mischief" the TOA Rule sought to eradicate because it allows a municipal officer to review and thereby delay an application, which is not authorized under the MLUL. Dunbar cites as an example the fact that, here, the Board had Dunbar's application for "several weeks," yet waited until two days after the new zoning ordinance became effective to advise Dunbar that it had not submitted a complete application. *148 Dunbar warns that applying the Appellate Division's standard would effectively make any applicant that submitted material with a request to waive submission of a document ineligible for the TOA Rule's protection even though the submission would be retroactively rendered "complete" if the Board granted a waiver at the public hearing. Although Dunbar agrees that applicants rely on zoning board checklists under N.J.S.A. 40:55D-10.3, it contends that the Appellate Division erred in conflating Section 10.3's completeness review and the TOA Rule. That decision, according to Dunbar, frustrates the TOA Rule's purpose to remove uncertainty regarding future municipal zoning changes by encouraging municipalities to "look for even the most minor and technical 'deficiencies' [in an application] to effectuate a zoning change."
B.
The Township relies on the TOA Rule and N.J.S.A. 40:55D-3 -the MLUL's definition of "application for development." According to the Township, those provisions specify that the TOA Rule is triggered only upon submission of an "application for development," defined as "all documents required by the ordinance for the approval sought by the applicant." The Township argues that if the Legislature intended "application for development" to mean something other than what is already provided by the statute, it would have said so when it passed the TOA Rule.
**557 The Township stresses that the MLUL's application for development definition "provides a bright-line inquiry" that advances the overarching "goal of providing certainty to the land development process." The Township asserts that it considered the GB-Zone change as part of a "comprehensive, Township-wide revision to the Ordinance," not as a means to frustrate land use applications or harass applicants. The Township highlights that the Board's decision to change the Ordinance to preclude garden apartments in the GB-Zone predated Dunbar's submission "as far back as March of 2012," and that the drafted ordinance implementing the change was introduced on May 28, 2013-six weeks before Dunbar's submission.
C.
1.
Amicus NAIOP argues that the Appellate Division's decision created a new, non-prescribed procedure whereby municipalities determine what constitutes an "application for development." NAIOP contends that Dunbar's "minor, non-substantive deficiencies" should not preclude protection under the TOA Rule because the Legislature did not intend for an applicant to be denied due to inconsequential deficiencies. Finally, NAIOP warns that the Appellate Division's opinion creates "a [new] nonsensical second step" to the MLUL's application process that places into the municipalities' hands whether an applicant is afforded protection under the TOA Rule. NAIOP claims that such authority is "the very evil the TOA Rule was enacted to protect" against, and undermines the MLUL goals of consistency, statewide uniformity, and predictability in land use decisions.
2.
Amicus NJLM urges this Court to affirm the Appellate Division's decision. NJLM asserts that the zoning officer properly relied upon the MLUL and the Township's relevant ordinance **558 provisions to make his determination that Dunbar had failed to submit documents required for an application for development. NJLM reasons that sections *149 112-192 and 112-300 of the Township's Ordinance serve as checklists under N.J.S.A. 40:55D-10.3 because they list the requirements for development applications. According to NJLM, the Appellate Division's decision "restored order to the application review process" by following the MLUL's express language and sustaining the Township zoning officer's role in evaluating land use applications against ordinance requirements.
3.
The NJSBA contends that the Appellate Division reached a self-contradictory result by ruling that an application need not be "complete" yet requiring that "all the application forms and accompanying documents be submitted" before a completeness determination is rendered. Drawing attention to common land use application processes, the NJSBA claims that the appellate panel's opinion "fails to recognize that most development applications are not complete when filed." In light of this standard practice, the NJSBA asserts that the panel's decision will operate to prevent many applications from receiving TOA Rule protection.
III.
"[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.' " Price v. Himeji, LLC, 214 N.J. 263, 284, 69 A.3d 575 (2013) (quoting Kramer v. Bd. of Adjustment of Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965) ). A zoning board's land use decisions thus "enjoy a presumption of validity." Ibid."[T]he action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action." Grabowsky v. Township of Montclair, 221 N.J. 536, 551, 115 A.3d 815 (2015).
**559 "On the other hand, however, a board's decision regarding a question of law ... is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no peculiar skill superior to the courts' regarding purely legal matters." Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419, 759 A.2d 901 (Law Div. 2000) (citations omitted) (quoting Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956) ); see also 388 Route 22 Readington Realty Holdings, LLC v. Township of Readington, 221 N.J. 318, 338, 113 A.3d 744 (2015) ("In construing the meaning of a statute, an ordinance, or our case law, our review is de novo.").
This case poses such a question of law: whether an application for development that does not include all required materials should be considered "an application for development" for purposes of the TOA Rule, N.J.S.A. 40:55D-10.5. In answering that question, we strive to effectuate the Legislature's intent in enacting the TOA Rule; as we have stressed, "[l]egislative intent 'is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language.' " State v. Marquez, 202 N.J. 485, 499, 998 A.2d 421 (2010) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ).
"When there is a conflict in interpretation," we turn to the "well-established canon of construction that 'a legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole.' " Koch v. Dir., Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999) (quoting *150 Zimmerman v. Mun. Clerk of Berkeley, 201 N.J. Super. 363, 368, 493 A.2d 62 (App. Div. 1985) ). We therefore "read the statutes in their entirety and construe 'each part or section ... in connection with every other part or section to provide a harmonious whole.' " Marquez, 202 N.J. at 499, 998 A.2d 421 (ellipsis in original) (quoting Bedford v. Riello, 195 N.J. 210, 224, 948 A.2d 1272 (2008) ). Here, we consider the TOA Rule in the context of the MLUL. **560 IV.
A.
The MLUL is "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development 'in a manner which will promote the public health, safety, morals and general welfare' using uniform and efficient procedures." Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 349, 828 A.2d 317 (2003) (quoting Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 178-79, 411 A.2d 704 (1980) ). The provisions of the MLUL pertinent to this appeal are the TOA Rule and the definitions section.
The TOA Rule, which took effect in May 2011, L. 2010, c. 9, replaced the former "time of decision rule." See A. Housing & Local Gov't Comm. Statement to A. 437 (2010). The time of decision rule required that zoning boards and reviewing courts "apply the statute in effect at the time of the [land-use application] decision." Pizzo Mantin Grp. v. Township of Randolph, 137 N.J. 216, 235, 645 A.2d 89 (1994). The time of decision rule allowed municipalities to "change ... land-use ordinances after an application ha[d] been filed, even 'in direct response to the application.' " Ibid. (quoting Burcam Corp. v. Planning Bd. of Medford, 168 N.J. Super. 508, 512, 403 A.2d 921 (App. Div. 1979) ). The Legislature acknowledged that the time of decision rule had produced "inequitable results, such as when an applicant has expended considerable amounts of money for professional services and documentation that becomes unusable after [an] ordinance has been amended." A. Housing & Local Gov't Comm. Statement to A. 437 (2010). In order to "effectively prohibit[ ] municipalities from responding to an application for development by changing the law to frustrate that application," ibid., the Legislature adopted the TOA Rule:
Notwithstanding any provision of law to the contrary, those development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development and any decision made with regard to that application for development. Any provisions of an ordinance, except those relating to health and public safety, that are adopted **561 subsequent to the date of submission of an application for development, shall not be applicable to that application for development.
[ N.J.S.A. 40:55D-10.5 (emphases added).]
The terms used in the TOA Rule are to be construed in accordance with any definitions set forth in the MLUL. See Norman J. Singer & J.D. Shambie Singer, 1A Sutherland Statutory Construction § 20:8 (7th ed. 2008) ("The definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute."). Thus, the term "application for development" must be interpreted to mean "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan, planned development, cluster development, conditional use, zoning variance or direction of the issuance of a permit." N.J.S.A. 40:55D-3 (emphasis added).
Determinations as to the precise contents of an "application for development"
*151 are thus left to municipalities, in accordance with the Legislature's general exercise of its "constitutional authority to delegate to municipalities the 'police power' to enact ordinances governing" land use "through the passage of the [MLUL]." 388 Route 22 Readington Realty Holdings, LLC, 221 N.J. at 339, 113 A.3d 744. Significantly, "[b]ecause the planning and zoning power stems from legislative allowance, it must be exercised in strict conformity with the delegating enactment-the MLUL." Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 101, 26 A.3d 418 (2011).
Pursuant to its delegated power, the Township incorporated into its Ordinance a set of requirements for development applications in Chapter 112, Article XXIII, Section 192. That section contains a detailed checklist and description of each application requirement for agency review. We will review those requirements later.
For the purposes of the legal question posed by Dunbar, however, it is sufficient that a checklist of application components are provided by the Ordinance. That list is anticipated in, and **562 incorporated by, the MLUL definition of "application for development" in N.J.S.A. 40:55D-3 and, by extension, the TOA Rule of N.J.S.A. 40:55D-10.5. Thus, to benefit from the protections of the TOA Rule, an application for development in Franklin Township must contain the required information and documents listed in Chapter 112, Article XXIII, Section 192 of the Township Ordinance.
That clear, easily applied, and objective standard advances the MLUL's goal of statewide consistency and uniformity in land use decisions. See Amerada Hess Corp. v. Burlington Cty. Planning Bd., 195 N.J. 616, 630, 951 A.2d 970 (2008) ; Rumson Estates, 177 N.J. at 349, 828 A.2d 317. The standard requires that the zoning officer compare the contents of a submission to the requirements of the municipal ordinance; it does not require review of each submission to determine whether a "meaningful review" can be undertaken. The trial court outlined a standard for requiring "enough information ... so that at least the [T]ownship can get ... started on engaging a meaningful review" and concluded that the Board's rejection of the application was arbitrary and capricious because the Township was able to "functionally begin a review" on the date of the application's submission. We agree with the Appellate Division that the trial court's standard is "fatally imprecise" and inconsistent with "the Legislature's intent that the MLUL 'bring consistency, statewide uniformity, and predictability to the approval process.' " Dunbar Homes, Inc., 448 N.J. Super. at 602, 154 A.3d 710 (quoting N.Y. SMSA Ltd. P'ship v. Twp. Council of Edison, 382 N.J. Super. 541, 550, 889 A.2d 1129 (App. Div. 2006) ).
Nonetheless, we note some important practical limits to Board determinations based on an application's failure to include all required materials. First, an application is not rendered "incomplete" simply because a municipality requires "correction of any information found to be in error and submission of additional information not specified in the ordinance or any revisions in the accompanying documents." N.J.S.A. 40:55D-10.3. Further, in the **563 event information required by local ordinance is not pertinent, the applicant may request a waiver as to that information or those documents it finds extraneous. Ibid. The applicant's submission will provisionally trigger the TOA Rule if a waiver request for one or more items accompanies all other required materials; if the Board grants the waiver, then the application will be deemed complete. If the Board denies the waiver, its decision will be subject to review under the customary *152 "arbitrary and capricious or unreasonable" standard. Grabowsky, 221 N.J. at 551, 115 A.3d 815.
Dunbar argues that an application for development should not need to contain all of the materials identified in Chapter 112, Article XXIII, Section 192, because those are the materials that comprise a "complete application for development," as indicated in Chapter 112, Article I, Section 4 of the Ordinance, and the TOA Rule does not require that the application be "complete." That argument is not persuasive.
N.J.S.A. 40:55D-3 does not distinguish between an "application for development" and a "complete application for development." The MLUL does contain a "completeness provision," N.J.S.A. 40:55D-10.3, which provides that an application shall be deemed complete forty-five days from its submission unless any required items are missing. The fact that the completeness provision contemplates the submission of an incomplete application that would not start the clock on the forty-five-day period does not mean that the initial, incomplete application can trigger the TOA Rule. Although the TOA Rule does not use the word "complete," it explicitly cross-references the local ordinance provisions that list application requirements. In short, the completeness provision has no bearing on whether an application receives the protection of the TOA Rule.
B.
Having determined that, to be protected by the TOA Rule, applicants must submit precisely what N.J.S.A. 40:55D-3 **564 requires --"the application form and all accompanying documents required by ordinance for approval of a ... site plan, ... conditional use, zoning variance or direction of the issuance of a permit" (emphasis added) -- we now consider whether the Board's decision that Dunbar's application was not entitled to the protection of the TOA Rule and that Dunbar would have to complete a more stringent (d)(1) variance application was "arbitrary and capricious or unreasonable." Grabowsky, 221 N.J. at 551, 115 A.3d 815.
The Township's relevant Ordinance provisions list the information and materials required for site plan and variance applications. Franklin Township, N.J., Code c. 112, art. XXIII, § 192 (2016). The materials required for use variance applications are set forth in Franklin Township, N.J., Code c. 112, art. XXXVI, § 300 (2016). Applicants are also required to submit an application fee. Franklin Township, N.J., Code c. 112, schedule 7 (2013).
It is undisputed that Dunbar's submission lacked the following items mandated by the Ordinance for site plan approval: (1) a sealed survey of the subject property; (2) a key map showing all zoning boundaries; (3) a location map showing the zoning of all properties within 200 feet of the subject property; (4) a site plan showing existing and proposed topography; (5) a site plan providing datum to which contour elevations refer; (6) a site plan indicating methods and placement of solid waste disposal facilities; and (7) four additional copies of the site plan application.
It is also undisputed that Dunbar's submission lacked the following Ordinance requirements for a use variance application: (1) drainage calculations; (2) a site plan indicating domestic water demand and the amount of effluent; (3) a submittal letter to the Department of Transportation; and (4) four additional copies of site plan and architectural documents. Schedule 7 of the Ordinance also requires payment of additional fees with a use variance application.
Dunbar argues that the Township has conflicting application requirements because, in addition to the Ordinance requirements *153 for site plan and variance applications, it lists requirements for a **565 bifurcated submission, or "an application ... where the applicant has elected to submit a separate application for any required approval of subdivision, site plan or condition use." Franklin Township, N.J., Code c. 112, art. XXXVI, § 300 (2016). The record suggests, however, that Dunbar submitted a single site plan and use variance application. Further, it is undisputed that, whether Dunbar submitted a single application for site plan approval with a use variance or separate applications for site plan approval and for a use variance, Dunbar failed to include materials required by the Ordinance. It is inconceivable that Dunbar's confusion about which Ordinance provision applied resulted in its failure to comply with either.
N.J.S.A. 40:55D-3 calls for submission of "the application form and all accompanying documents required by ordinance." The Township's zoning officer properly determined that Dunbar's application did not include "all accompanying documents required by ordinance" and was, therefore, "incomplete." Because the application was incomplete and no waiver was sought, Dunbar's application could not benefit from the TOA Rule. Rather, Dunbar's application was properly subjected to the (d)(1) variance requirement. Hence, the decision of the Board to uphold the Township zoning officer's determination was not "arbitrary and capricious or unreasonable."
V.
For the reasons set forth above, we affirm the judgment of the Appellate Division.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.

N.J.S.A. 40:55D-70(d)(3) allows a Zoning Board of Adjustment to permit a "deviation from a specification or standard ... pertaining solely to a conditional use" for "special reasons."

N.J.S.A. 40:55D-70(d)(1) allows a Zoning Board of Adjustment to permit "a use or principal structure in a district restricted against such use or principal structure" for "special reasons."

To justify a (d)(1) variance, an applicant must fit within at least one of the three "special reasons" categories set forth in N.J.S.A. 40:55D-70(d) :
(1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility; (2) where the property owner would suffer undue hardship if compelled to use the property in conformity with the permitted uses in the zone; and (3) where the use would serve the general welfare because the proposed site is particularly suitable for the proposed use.
[Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 102, 26 A.3d 418 (2011) (citations and internal quotation marks omitted) (quoting Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76, 906 A.2d 454 (App. Div. 2006) ).]