**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3212-19

MICHELE GONZALEZ,

    Plaintiff-Appellant,

v.

ANTHONY ODUNLAMI,
PLANNING BOARD OF THE
TOWNSHIP OF HOLMDEL, and
TOWNSHIP OF HOLMDEL,

    Defendants-Respondents.

_____

Submitted February 10, 2021 – Decided April 23, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4343-18.

Robert M. Mayerovic, attorney for appellant.

Giordano, Halleran & Ciesla, PC, attorneys for respondent Anthony Odunlami (Adam Garcia, on the joint brief).

Harter & Pfleger, LLC, attorneys for respondents Planning Board of the Township of Holmdel (Martin F. Pfleger, on the joint brief).

PER CURIAM

Plaintiff Michele Gonzalez filed a verified complaint in lieu of prerogative writ objecting to defendant Planning Board of the Township of Holmdel's (Board) grant to defendant Anthony Odunlami of preliminary and final subdivision approvals, with bulk and design variances approval to demolish an existing one-family home and construct three new homes on the site. The Law Division dismissed Gonzalez's complaint with prejudice and upheld the Board's decision. We agree and affirm.

I.

Odunlami owned a one-family house situated on approximately 4.6 acres of land (the Property) in the Township of Holmdel that he wanted to demolish to create three new building lots for the construction of three one-family homes. He successfully applied to the Board for "preliminary and final major subdivision approval, 'c' or 'bulk' variance relief, design waiver relief, and such other relief or approval" as the Board or its consultants may deem necessary to permit the demolition of the existing property and the major subdivision of the

2

land to create three single-family residential home.  The application sought the following variances:

> (i) minimum driveway widths of [twelve feet] and [sixteen feet] whereas [Ordinance] 30-80a requires a minimum driveway width of [eighteen feet] (one-way traffic) and [twenty-five feet] (two-way traffic);
>
> (ii) a driveway setback approximately [twelve feet] from the northerly tract boundary line whereas [Ordinance] 30-80a requires a minimum setback of [twenty feet];
>
> (iii) a landscape easement width of [fifteen feet] whereas [Ordinance] 30-54 requires a minimum width of [forty feet];
>
> (iv) a steep slope disturbance of 20,104 [square feet] of slopes greater than [twenty-five percent] whereas [Ordinance] 30-116.6.f.1 provides for a maximum disturbance of 5,000 [square feet];
>
> (v) a disturbance of 2,340 [square feet] of slopes greater than [twenty-five percent] whereas [Ordinance] 30-116.6.f.1 prohibits disturbance of any slopes greater than [twenty-five percent];
>
> (vi) relief from [Ordinance] 30-116.6.f.3 to permit steep slopes outside a conservation easement;
>
> (vii) relief from [Ordinance] 30-116.6.f.4 and 5 to permit the creation of slopes greater than [twenty-five percent]; and
>
> (viii) relief from [Ordinance] 30-116.10.c to waive the formal submission of a woodlands preservation plan.

3

[(Pa57; Pa33-34).]

Based upon direction from the Board Secretary and Administrative Officer of the Board, Odunlami published legal notice in the Asbury Park Press and sent certified mail to all owners of real property located within 200 feet of the Property, informing them that his application would be heard by the Board on June 5, 2018.

The Board Secretary, however, realized on June 5 that a primary election was scheduled that day and thus Odunlami's application would have to be adjourned. Consistent with the Board's practice, she posted a notice of adjournment on the front doors of the Township courthouse and the town hall stating the Board would consider Odunlami's application at a Special Board meeting on June 11. The Board also timely published notice of the rescheduled hearing date in three local newspapers.

The Board considered Odunlami's application over the course of three hearings. On June 11, Odunlami testified, as did his expert, Andrew Comi, a licensed professional engineer, concerning the Property's existing condition and the nature and scope of the proposed development. When the Board allowed public comment, Gonzalez's husband, Ramon, acting as her proxy, questioned whether proper notice was given regarding the rescheduled hearing date. The

4

Board attorney and the Board chair responded that proper notice was provided through the notifications posted on June 5 and published in the newspapers. After closing public comment, the Board announced Odunlami's application was continued to July 24, stating it would make an on-site visit to the Property on July 10.

The Board evidentially continued Odunlami's hearing on August 7 and September 4, the date the Board approved the application by a four-to-one vote. A corresponding resolution of approval was adopted by the Board on October 16.

Gonzalez challenged the Board's action by filing a complaint in lieu of prerogative writs asserting the Board lacked proper jurisdiction to consider Odunlami's application due to improper notice and that its approval of the application was arbitrary, capricious, or unreasonable. She demanded the court declare the Board's resolution to be null and void and that any permits issued to Odunlami by defendant Holmdel in furtherance of the resolution were without force and effect.[1]

Following briefing and argument, Judge Joseph P. Quinn issued an order and thorough written decision on March 18, 2020 rejecting Gonzalez's challenge

---

[1] A stipulation of dismissal was later filed dismissing Holmdel.

A-3212-19

to the Board's resolution. The judge determined "that the . . . Board extensively considered all relevant and legal elements relating to the application over three days of hearings and site inspections, and that approval was not arbitrary, capricious, or unreasonable."

## II

Gonzalez contends that the Board was without jurisdiction to consider Odunlami's application because the notice given to the property owners within 200 feet of the Property was defective, thereby causing the Board not to have jurisdiction to act on the application. She maintains the Board's June 5, 2018 adjournment notice posted on the municipal buildings was not statutorily authorized, as a municipal body can only act by way of official action on the record. We disagree.

There is no doubt that Odunlami complied with the notice provisions of N.J.S.A. 40:55D-12 by publishing notice of his application in the Asbury Press and sending it by certified mail to Gonzalez and other property owners within 200 feet of the Property. Relying on Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335 (App. Div. 2008), Judge Quinn did not err—as Gonzalez argues—in upholding the Board's meeting rescheduling with its door postings. In Pond Run, "the [Hamilton

Township Zoning] Board[] chairman announced on the record the adjournment of the hearing to a future date." Id. at 349.  Thus, we agree with the trial court's observation that "[t]here is no . . . provision in . . . [N.J.S.A. 40:55D-11[2]] requiring additional certified notices if an application is carried to another meeting.  The [statute] only requires initial notice." Ibid. (first, second, and fifth alterations in original).

Because the Board could not meet on June 5, it could not state on the record that Odunlami's application was adjourned.  Thus, consistent with its practice, the Board understandably placed adjournment notices on the front door where the meeting was to be held and where municipal business was conducted. See N.J.S.A. 40:55D-10(b) (allowing municipal bodies to enact rules that govern their hearings).  This was adequate notice to the public.

Moreover, as the judge recognized, Gonzalez's husband, "as [her] proxy and also neighboring property owner and interested party," saw "the [p]osted [n]otice advising him of the adjournment to the June 11 . . . special meeting," where he appeared and addressed the Board.  See Cox & Koenig, N.J. Zoning &

_____

[2]  The statute, in pertinent part, requires that public notices for a proposed variance "shall state the date, time and place of the hearing, [and] the nature of the matters to be considered . . . ."

Land Use Admin., § 18-1.2 at 363 (2021) ("Note, however, that once [a person entitled to notice] has appeared [to a public hearing], even a party asserting that he is prejudiced is estopped from asserting that he got no notice."). Indeed, there was "no harm, no foul" in the Board's adjournment notification.

III

Turning to the merits of the Board's action, Gonzalez contends its resolution was arbitrary, capricious, or unreasonable, and must be vacated because Odunlami's major subdivision application was a self-created hardship that does not qualify as a hardship under N.J.S.A. 40:55D-70(c)(1). She also argues Odunlami neither satisfied the positive or negative criteria necessary for the Board to approve his application. Again, we disagree.

An application for a variance from a bulk or dimensional provision of a zoning ordinance is governed by N.J.S.A. 40:55D-70(c). Subsection 70(c)(1) permits a variance when strict application of the zoning ordinance would create exceptional practical difficulties or exceptional hardship because of the characteristics of the subject property. N.J.S.A. 40:55D-70(c)(1). "Undue hardship refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise." Jock v. Zoning Bd. of Adjustment of Twp. of Wall, 184 N.J. 562, 590 (2005).

An applicant who pursues a variance under N.J.S.A. 40:55D-70(c)(1) must establish that the conditions of the property present a hardship and efforts have been made to bring the property into compliance with the ordinance. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 29 (2013). "Those efforts may include attempts to acquire additional land or offers to sell the nonconforming lot to adjacent property owners." Id. at 30 (citing Jock, 184 N.J. at 594). Establishing undue hardship constitutes a showing of the "positive" criteria for a (c)(1) variance. Ibid.

"In addition, an applicant for a (c)(1) variance must satisfy the negative criteria." Ibid. (citing Nash v. Bd. of Adjustment of Morris Twp., 96 N.J. 97, 102 (1984)). "The negative criteria require proof that the variance will not result in substantial detriment to the public good or substantially impair the purpose of the zoning plan." Ibid.

The Board's decision was proper as it supported by Comi's uncontroverted testimony. See id. at 33 (holding a board's resolution to grant or deny a variance must be based on findings of fact in the record) (citations omitted). Comi thoroughly explained why the variances were necessary for Odunlami to develop his property because of its peculiar physical features. He also indicated that Odunlami's development could be completed without substantial detriment to

the public good or substantial impairment of the intent and purpose of the zone plan and zoning ordinance. Comi stated:

> Regarding the access to these proposed sites, we met with your Board professionals before we submitted an application. At first[,] we were looking at or proposing three accesses off of Holmdel Road. <u>We soon decided that that wouldn't be the best idea, as we would ruin the character of the steep slopes, the steep wooded slopes along Holmdel Road.</u>
>
> Next[,] we thought of proposing a cul-de-sac, or a traditional [twenty-eight]-foot wide cul-de-sac, with sidewalks. But again, <u>that would be more intense and would not really fit with the character of this neighborhood residential community.</u>
>
> So[,] . . . we settled upon an [eighteen]-foot wide shared driveway, which essentially would be a slight expansion of the existing driveway that currently exists.
>
> We feel that this is, although we require a variance for the width of this driveway, which requires [twenty-five]-foot wid[th] for two-way access, . . . <u>is appropriate, given that the only vehicles that will be needed to access this site would be [] these single-family dwellings and emergency vehicles, if necessary. No public vehicles or other service vehicles would be needed to access the site.</u>
>
> Additionally[,] there are three internal driveways, of [twelve] feet and [sixteen] feet width. Lot 31.01, the largest of the three lots, will have a [sixteen]-foot wide driveway. The remaining two lots will have a [twelve]-foot wide driveway.

> Similarly[,] these require a variance for not providing a [twenty-five]-foot wide, two-way driveway width.
>
> The proposed driveway, the main driveway, will be privately maintained. <u>We propose a homeowners associat[ion] will be created to manage the maintenance of this shared driveway.</u>
>
> . . . .
>
> Additionally, the entrance to the site is proposed to remain. However, it will be [twelve] feet from the northerly property line, and [twenty] feet is required. Rather than relocating the driveway and disturbing some of the wooded steep slopes that are along Holmdel Road, we propose to leave the driveways in the existing location as it's already cleared, and provide good advantage point in both the north and south direction.
>
> [(emphasis added).]

In satisfying the positive and negative criteria, Odunlami demonstrated his hardship was not self-created, meeting the requirements necessary for the Board to grant variance relief.

In addition, the Board visited the site, which was not its usual course, and held three hearings to discuss Odunlami's application. The Board resolution fully detailed the initial application, the testimony and factual history of the proceedings, the modifications to the application, and articulated the statutory bases for the Board's actions with regards to the Municipal Land Use Law,

11

N.J.S.A. 40:55D-1 to -163. Gonzalez has not overcome the presumption of validity, nor demonstrated the unreasonableness of the Board's action. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 558 (2018). There is nothing in the record showing that the Board's decision was arbitrary, unreasonable, or capricious; thus, as Judge Quinn appropriately determined, its decision should not be disturbed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION