**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3518-19

DANIEL GREENHOUSE,

    Plaintiff-Appellant,

v.

TOWNSHIP OF MONTGOMERY,

    Defendant-Respondent.

_____

             Argued June 30, 2021 – Decided September 9, 2022

             Before Judges Accurso and DeAlmeida.

             On appeal from the Superior Court of New Jersey, Law
             Division, Somerset County, Docket No. L-0424-19.

             Bruce I. Afran argued the cause for appellant.

             Anthony R. Todaro argued the cause for respondent
             (Mason, Griffin & Pierson, PC, attorneys; Anthony R.
             Todaro, on the brief).

    The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff Daniel Greenhouse appeals from the March 31, 2020 order of the Law Division dismissing his complaint in lieu of prerogative writs challenging a resolution by the governing body of defendant Township of Montgomery approving the renewal of a lease of property the township purchased with State Green Acres funds to a private party for operation of his commercial farming enterprise. We vacate the March 31, 2020 order and remand for further proceedings.

I.

Greenhouse owns a parcel in the township on which he resides. His land abuts adjoining parcels designated in the tax records of the municipality as Block 29001, Lots 5 and 5.01 (the property). The property is 17.87 undeveloped acres with eight tillable acres on Lot 5. While there is a driveway, parking area, and access to a public trail network on Lot 5.01, it is undisputed that there are no delineated public access points, signs, or trails on Lot 5.

The township purchased the property, along with a number of other parcels, with State Green Acres funds in 1997. The purchase is subject to the March 17, 1997 Green Trust Project Agreement between the State, by the Department of Environmental Protection (DEP), and the township. The agreement provides that in exchange for State funding to finance the purchase,

the township will hold and use the property in accordance with N.J.A.C. 7:36-1, et seq., and the provisions of the agreement. The regulations noted in the agreement were promulgated by DEP to, among other things, "implement the purposes and objectives of the Green Acres laws in order to help ensure that there is access to and an adequate supply of lands for either public outdoor recreation or conservation of natural resources, or both." N.J.A.C. 7:36-1.1 (a)(1).[1]

According to the agreement, the property

> shall not be . . . diverted to a use for other than recreation and conservation purposes without the approval of the [DEP] Commissioner and the State House Commission and following a public hearing at least one month prior to any such approvals.

The agreement defines "recreation and conservation purposes" as

> use of lands for parks, natural areas, historic areas, forests, camping, fishing, water reserves, wildlife, reservoirs, hunting, boating, winter sports, ecological and biological study, and similar uses for either public outdoor recreation or conservation of natural resources, or both.

---

[1] The agreement is part of the Millstone Stream Corridor 2 cooperative project with neighboring Rocky Hill Borough, Delaware & Raritan Greenway, Inc., Somerset County, and the State. In addition to the Montgomery Township parcels, the project includes several parcels in Rocky Hill purchased by that municipality with State funds. The parcels are in close proximity to each other and to the D&R Canal State Park, the Millstone River State Park, and environmentally sensitive areas.

The provisions of the agreement regarding the permitted uses of the property and its diversion to a non-permitted use reflect the limitations set forth in N.J.S.A. 13:8A-3(c) and N.J.S.A. 13:8A-13, provisions of the New Jersey Green Acres Land Acquisition Act of 1961, N.J.S.A. 13:8A-1 to -18.

Schedule C of the agreement provides that "[a]ctive recreation facilities will be sited within the approved areas delineated on the Exhibit 2 map." The property is delineated as Active Area D on the Exhibit 2 map. Schedule C further provides that the

> [p]roposed use of the county and municipal parkland[2] is for shared active recreation facilities with Rocky Hill Borough, managed grassland bird habitat, protection of environmentally sensitive areas, and trails in the wooded stream areas. . . . . Existing agricultural fields in the active recreation areas will be maintained as open fields, including agricultural uses, until such time as they are developed for recreation facilities. Existing agricultural fields in the preservation areas may be maintained in agricultural use for three years in order to avoid payment of roll[-]back taxes.

---

[2] "'Parkland' means land acquired, developed, and/or used for recreation and conservation purposes, and includes funded and unfunded parkland." N.J.A.C. 7:36-2.1. "'Funded parkland' means parkland that a local government unit . . . has acquired . . . with Green Acres funding." Ibid. The property is funded parkland.

A September 25, 1997 deed memorializes the township's purchase of a partial interest in the property. The copy of the deed in the record is incomplete. The first page is cut off mid-sentence and the second page begins in the middle of a different sentence. The deed states that "[t]he said property shall hereafter be used only for State or municipal park purposes." The portions of the deed in the record do not mention the March 1997 agreement or its terms.[3]

On January 9, 2014, the township leased the property to John A. Johnson, d/b/a 26 Dead Tree Run Road, LLC. The lease allows Johnson to farm the eight tillable acres and any appurtenant areas through the planting and harvesting of crops for the 2014 through 2018 growing seasons for an annual rent of $124.08 and gives Johnson the right to sell for his profit any crops harvested on the property. Paragraph 5(l) of the lease provides that

> [t]he [property] shall be kept accessible to the public at all times and [Johnson] shall not establish barriers of any type on or about the [property], except that the public shall not be permitted access to those areas actively farmed. If the [property] has an existing, marked pathway for public use, said pathway shall remain open and accessible to the public. If the [property] does not have an existing marked pathway,

---

[3] Plaintiff alleges the township also purchased an interest in the property by deed dated September 11, 1996, which predates the State funding agreement. A copy of the September 11, 1996 deed is not in the record. Presumably, the combined interests transferred in the 1996 and 1997 deeds give the township full ownership of the property.

[Johnson] shall leave an eight (8) foot wide strip for purposes of public access, as directed in the attached Exhibit A describing the [property]. [Johnson] shall not allow the public to enter the [property] to harvest or "pick your own."

The lease, which was renewable for an additional five-year term, states that it was submitted to the DEP Green Acres Program for review and approval pursuant to N.J.A.C. 7:36-25.13, was awarded pursuant to the public bidding laws, N.J.S.A. 40A:12-14, and authorized by resolution of the township's governing body on January 6, 2014. It is undisputed that there was no existing, marked pathway on the property when it was leased to Johnson and that he never subsequently created or maintained an eight-foot-wide strip for public access.

In August 2018, as the end of the five-year term was approaching, a township official sent an email to a DEP employee informing her of the township's intent to renew the lease, along with similar leases relating to other properties owned by the township. She stated, "the leases include a provision that they may be renewed for up to an additional five years. Does your office need to review the proposal for renewal?" A copy of the lease was attached.

The DEP employee responded by email, stating in relevant part:

The 2014 farm leases were approved by our office, however, since this time we have a Regulatory Officer on staff that is trying to make our lease reviews consistent. Therefore, I will have him take a look at the

6

language to make sure there are no changes or additional info needed for the 5 year renewal. . . . Will a new document be generated or will it just be the farmer notifying the Township that they want to extend for another 5 years?

I will get this reviewed and will be back in touch next week.

The township official responded that the lease would be extended by a "short agreement that would extend the term. Does [DEP] need to review that agreement language?"

On September 14, 2018, the DEP employee replied in relevant part:

As long as the agreement language is based off the original 2014 form and just revises the term, we should not need to review the extension agreement. I did want to point out that the below items should be added to the next form lease:

1. Please include a provision that states that all rental payments received by the Township shall be used for "operating, maintenance or capital expenses related to its funded parkland or its recreation program as a whole."

2. All leases are required to provide "reasonable public access." Paragraph 5(l) addresses public access in a manner that is likely sufficient. However, to ensure compliance, we suggest adding a requirement that the farmer maintain the public access trail, where applicable. Signage advising the public of its access rights would also be beneficial.

3.	Please revise the lease to provide that any modifications must be approved by DEP.

There is no further communication in the record from DEP regarding review of the lease or the renewal. There is, therefore, nothing in the record indicating that the lease or renewal agreement was forwarded to the Regulatory Officer for review or approval or, if so, whether the officer approved the documents.

On March 21, 2019, the township, without requesting bids, executed a five-year extension of the lease. The renewal agreement does not contain any of the necessary or recommended items listed by the DEP official in the September 14, 2018 email. The lease renewal was approved by the township's governing body through its adoption of Resolution #19-3-83 (Resolution) on March 7, 2019.[4]

On April 1, 2019, Greenhouse filed a complaint in lieu of prerogative writs in the Law Division challenging the Resolution. He alleged the Resolution: (1)

---

[4]	It is undisputed Johnson was a member of the township's Agricultural Advisory Committee when the lease was renewed. The committee advises the mayor and governing body on agricultural matters. Montgomery, N.J. Code §2-28.5. Plaintiff produced evidence that the township's Planning Director recommended the lease not be renewed and the property be converted to a managed meadow or pollinator meadow. The governing body, however, adopted the preference of the township's Open Space Committee that the property remain a commercial farming operation. The Open Space Committee advises the mayor and governing body on open space, stream corridor, and farmland preservation programs. Montgomery, N.J. Code §2-17.6.

violates the deed restriction on the property; (2) violates the agreement; (3) is an unlawful diversion of Green Acres property to a private commercial use; (4) violates the State Constitution's limitations on expenditures for the purchase of land with State funds for specific purposes, see N.J. Const. art. VIII, § 2, ¶ 7; (5) was the result of an unauthorized delegation of decision-making authority by the township's governing body to the Open Space Committee; (6) is contrary to township land use ordinances; (7) is arbitrary and capricious; and (8) violates the Donations Clause of the State Constitution, see N.J. Const. art. VIII, § 3, ¶ 3.

On October 11, 2019, the trial court entered an order denying plaintiff's motion for partial summary judgment and granting the township's cross-motion for partial summary judgment. In a written opinion, the court found the township exercised its authority to renew the lease pursuant to N.J.S.A. 40A:12-14, which allows it to lease real property "not needed for public use as set forth in the resolution . . . authorizing the lease." The court found, however, that because the Resolution did not make an explicit finding that the property was not needed for public use, it would be "prudent" to remand the matter to the township's governing body "to clarify its findings and intentions . . . ." On

remand, the governing body adopted a resolution finding that when it renewed the lease, the property was not needed for public use.

On March 31, 2020, the trial court, after having tried the matter on the papers, entered judgment in favor of the township on the remaining claims and dismissed the complaint with prejudice. In a written opinion, the court found: (1) DEP approved the lease renewal in the email exchange detailed above; (2) the renewal was not a diversion of the property because N.J.A.C. 7:36-25.13(b)(10) permits land purchased with Green Acre funds to be used for agricultural purposes if public access is protected and the use is approved by DEP; (3) the renewal does not violate the agreement; (4) a "short term lease of the property for agricultural purposes" until the township converts it to a park is consistent with the deed restriction; (5) the provision of the agreement concerning roll-back taxes does not limit the use of the property for agricultural purposes to three years; and (6) the renewal did not violate the Donations Clause because it furthered a public purpose by conserving the property for future use as a park.[5]

---

[5]   The trial court mischaracterized the complaint as plaintiff's "effort to invalidate [the] Resolution . . . so that he may personally enjoy the [property] as an 18.22[-]acre extension of his backyard at the taxpayer's (sic) expense." The township parroted this language in its brief. This description of the complaint

This appeal follows. Plaintiff argues the trial court made factual and legal errors with respect to the conclusions described above.[6]

## II.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). "Thus, while will we give substantial deference to findings of fact, it is essential that the [municipal body's] actions be grounded in evidence in the record." Ibid. The trial court's findings of fact after a bench trial will be upheld if supported by competent, relevant, and reasonably credible evidence. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). In addition, although "public bodies . . . must be allowed wide latitude in their delegated

is both pejorative and inaccurate. Plaintiff does not allege he has a possessory right to the property. To the contrary, he argues the public has a right of access to the property which has been blocked by the township. He also alleges the township has, contrary to law, allowed a private party with connections to municipal government to enjoy a personal economic gain from his commercial exploitation of Green Acres property at taxpayers' expense.

[6] The trial court opinion addressed several other arguments, which plaintiff does not raise in this court. We deem arguments with respect to those claims waived. "[A]n issue not briefed is deemed waived." Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2022); Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a claim waived when the party failed to include arguments supporting the claim in its brief).

discretion," Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005), we review questions of law de novo. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 559 (2018).

We begin with the legal question of whether leasing the property for commercial farming is a diversion of funded parkland. N.J.S.A. 13:8A-13, N.J.A.C. 7:36-25.2(a), and the agreement prohibit the diversion of the property to a use other than for recreation and conservation purposes without the approval of the DEP Commissioner and the State House Commission.

N.J.A.C. 7:36-25.2(c) sets forth a detailed list of uses DEP considers to be a diversion of funded parkland. That list does not include agricultural uses. N.J.A.C. 7:36-25.2(d) sets forth a detailed list of uses DEP considered not to be a diversion of funded parkland. That list does also does not expressly include agricultural uses. However, according to N.J.A.C. 7:36-25.2(d)(8),

> [t]he following activities do not constitute a diversion . . . of funded . . . parkland:
>
>    . . . .
>
> Any lease . . . or renewal thereof, which supports or promotes the use of parkland for recreation and conservation purposes, has a term of less than 25 years and is approved by [DEP] under N.J.A.C. 7:36-25.13
>
>    . . . .

Section (b)(10) of N.J.A.C. 7:36-25.13 states that "[i]f the parkland is to be leased . . . for agriculture" certain factors must be considered by DEP when considering approval of the lease. It is evident from this regulation that DEP does not consider agricultural use pursuant to a lease to be a diversion of funded parkland, provided the use supports or promotes recreation and conservation purposes and meets regulatory requirements. The purchase agreement reflects this interpretation of the statute, as it provides that "[e]xisting agricultural fields in the active recreation areas will be maintained as open fields, including agricultural uses until such time as they are developed for recreation facilities." The property, in Active Area D, is subject to this provision of the agreement.

Plaintiff argues that N.J.A.C. 7:36-25.13(b)(10), by permitting the leasing of funded parkland for commercial agricultural activities, contradicts the constitutional and statutory prohibitions on the diversion of funded parkland because such activities exclude public access and do not support or promote recreation and conservation purposes. The trial court rejected plaintiff's position, concluding that

> [b]y allowing and promoting agriculture on [funded parkland], governmental entities are thereby encouraged to purchase open lands for preservation even though they may not presently have the funds to develop or maintain them for recreational use. The governmental entity can maintain and monitor the land

13

by leasing acreages to farmers who can (1) beneficially use the property; (2) . . . use the property in a manner that prevents it from being overgrown or used for illegal or deleterious uses such as dumping; (3) conserve and steward the property for future recreational use; and (4) permit the property to be held as public lands that are protected from development and as opposed to allowing the property to remain in private hands and be subject to residential, commercial or industrial development in a manner that would thwart or undermine the local Open Space Master Plan.

Plaintiff argues that the trial court erred because the constitutional and statutory limitations on the use of funded parkland require public access and no published precedent has recognized that commercial agriculture use supports or promotes recreation and conservation purposes. Plaintiff argues that the trial court's finding that DEP's interpretation of the law is reasonable because it allows a municipality to purchase and "bank" property for future use as a park is inapposite here. He notes that at the time the lease was renewed, commercial farming activity on the property had excluded the public for more than twenty years, during which the township had not created a plan for future use of the property for recreation and conservation purposes. According to plaintiff, the Legislature did not intend for Green Acres funds to be used to buy land to subsidize decades of commercial farming at taxpayers' expense.

The township argues that DEP considers commercial agricultural use of the property to support or promote recreation and conservation purposes, but does not explain why this interpretation is consistent with the constitution and Green Acres statutes.

While the trial court's reasoning on this point has surface appeal, provided meaningful public access is maintained on funded parkland used for commercial agricultural purposes and there is a meaningful plan ultimately to use the property for recreation and conservation purposes, we are hesitant to decide the important question of statutory interpretation before us without the benefit of DEP's views. The "meaning ascribed to" the Green Acres statutes by DEP, "including the agency's contemporaneous construction, long usage, and practical interpretation, is persuasive evidence of the Legislature's understanding of its enactment." Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212 (1991). Unlike in Cedar Cove, where DEP intervened in a matter concerning the meaning of the 1975 Green Acres Act, id. at 206, DEP did not appear in the trial court and has not submitted a brief in this appeal. The trial court's decision is based on policy considerations on which DEP has not expressed its view. In particular, the record does not contain evidence of the agency's longstanding practices and whether DEP interprets the constitution and statutes to permit the indefinite –

here decades long – commercial agricultural use of funded parkland to which the public has no access and for which no realistic plan for future use for recreation and conservation purposes appears to exist.

As explained in detail below, we conclude that a remand is warranted to create a sufficient record to determine whether, if leasing the property for commercial agricultural use is not a diversion, DEP reviewed the lease renewal and, if so, whether its review comported with the agency's regulations. To accomplish this objective, we direct the trial court to join DEP as a necessary party. See R. 4:28-1(a). DEP's involvement in the trial court on remand on these issues will give the agency the opportunity to state its views with respect to whether, and under what circumstances, leasing funded parkland for commercial agricultural use supports or promotes recreation and conservation purposes and is, therefore, not a diversion of Green Acres property. The trial court shall determine whether, in light of DEP's views, it is necessary to reconsider its legal conclusions with respect to whether the lease renewal was a diversion of the property.[7]

---

[7] For the same reasons, we do not decide whether renewal of the lease violated the deed restriction. The parties appear to agree that the restriction was placed in the deed to effectuate the March 1997 agreement, to which DEP was a party. Given the agency's contractual interest and statutory responsibilities to ensure

A-3518-19

Assuming that renewal of the lease was not a diversion of the property, we turn to whether the trial court erred when it concluded that DEP approved the renewal in accordance with controlling regulations. Pursuant to N.J.A.C. 7:36-25.13(a), if a municipality

> seeks to . . . renew a lease . . . which would support or promote the use of funded parkland . . . for recreation and conservation purposes, [it] shall submit the proposed lease . . . to [DEP] for approval at least 45 days before it intends to execute the lease . . . . Any such lease . . . that is executed without [DEP's] approval is void and of no legal effect.

In addition to several other requirements, "[t]he lease . . . shall . . . [r]equire that the public shall have reasonable access during the term of the lease . . . to the parkland . . . which is the subject of the lease . . . ." N.J.A.C. 7:36-25.13(b)(3). In addition, the lease "shall . . . [r]equire that the lessee . . . comply with . . . any deed restrictions pertaining to the parkland." N.J.A.C. 7:36-25.13(b)(7).

DEP "shall evaluate a request for renewal of a lease . . . under the substantive standards for lease approval at (d) below." N.J.A.C. 7:36-25.13(b)(5). Subsection (d) provides, in relevant part, that the following factors "will" be considered by DEP when reviewing a lease renewal:

---

that properties purchased with Green Acres funds are appropriately used, its views on the meaning of the deed restriction and whether the lease renewal violates its terms should be considered by the trial court.

2.     Whether the lease . . . will sufficiently promote or support recreation or conservation purposes;

3.     Whether the lease . . . will provide reasonable public access to the funded parkland;

     . . . .

5.     Whether the lease . . . will provide sufficient compensation (payment, rental or other consideration) for allowing the proposed use of the parkland . . . .;

     . . . .

8.     With respect to renewals . . .

     i.     Whether the lessee . . . failed to meet one or more terms of the prior lease . . . or to demonstrate sound . . . management practices;

     . . . .

     iii.     Whether the local government unit . . . used compensation (payments, rentals or other consideration) it received under the prior lease . . . for purposes other than those allowed under (e) below.

(e)     A local government unit . . . that enters into a lease . . . under this section shall use any payments, rentals, or other consideration it receives under the lease . . . for operating, maintenance, or capital expenses related to its funded parkland or to its recreation program as a whole.

[N.J.A.C. 7:36-25.13(d) and (e).]

We have carefully reviewed the record and conclude it contains insufficient evidence to support the trial court's finding that DEP approved the renewal of the lease of the property in accordance with the controlling regulations.

As a threshold matter it is not clear DEP even reviewed the renewal agreement. According to N.J.A.C. 7:36-1.5, "[u]nless otherwise specified, . . . all submissions required under this chapter should be directed to the Green Acres Program, [DEP], PO Box 412, 501 East State Street, Trenton, New Jersey 08625-0412." There is no evidence in the record that the township submitted the lease renewal to DEP at this address. The only evidence in the record of the township contacting DEP about the renewal are email exchanges between a township official and a DEP employee which are ambiguous with respect to whether the lease and the renewal agreement were reviewed and approved by the agency.

In the September 4, 2018 email, the DEP employee states that "[a]s long as the [renewal] agreement language is based off the original 2014 form and just revises the term, we should not need to review the extension agreement." Presumably "the original 2014 form" refers to the original lease. There is, however, no subsequent communication from DEP stating that someone at the

19

agency determined whether or not the provisions of the renewal agreement were "based off" the original lease. Thus, there is no evidence in the record of whether, in the employee's view, the extension agreement needed to be, and, if so, was, reviewed by the agency.

In addition, the substance of the September 4, 2018 email is incorrect. N.J.A.C. 7:36-25.13(b)(5) directs that DEP "shall evaluate a request for renewal of a lease . . . under the substantive standards for lease approval under (d) below . . . ." (emphasis added). This regulation imposes an affirmative duty on DEP to review lease renewal requests, even those with terms identical to a previously approved lease, under the standards set forth in N.J.A.C. 7:36-25.13(d). Such a review is necessary, in part, because the agency must determine if the lessee "failed to meet one or more terms of the prior lease . . . or to demonstrate sound administrative or management practices . . . ." N.J.A.C. 7:36-25.13(d)(8)(i). This determination cannot be made merely by comparing the terms of the original lease to the renewal agreement. Thus, the lease renewal would be invalid if the record establishes that DEP did not review the renewal agreement because it contained the same terms as the original lease.

Even if we were to assume that a review of the lease renewal took place, there is insufficient evidence in the record to determine whether the review

comported with DEP's regulations. As noted above, DEP was obligated to review whether Johnson failed to meet any of the terms of the 2014 lease. This inquiry was important here, given that it is undisputed that Johnson did not create or maintain an eight-foot corridor for public access on the property.

In addition, N.J.A.C. 7:36-25.13(b)(3) requires that a lease of funded parkland provide the public reasonable access during the term of the lease. N.J.A.C. 7:36-25.13(d)(3) requires DEP to determine whether a lease renewal complies with the reasonable public access regulation. In the September 14, 2018 email, the DEP employee stated that the public access provision of the 2014 lease was "likely sufficient," but that "to ensure compliance," the agency suggested "adding a requirement that the farmer maintain the public access trail, where applicable." In addition, the employee stated that "[s]ignage advising the public of its access rights would also be beneficial."

There is nothing in the record establishing that DEP determined that the public access provision of the lease renewal actually was sufficient. Nor does it appear that the agency followed up on the other items mentioned in the email, as the renewal agreement does not require Johnson to put up signage and it is undisputed he has never created or maintained a trail for public access on the property.

21

In addition, there is no evidence in the record that DEP analyzed whether "the lease . . . will provide sufficient compensation (payment, rental or other consideration) for allowing the proposed use of the parkland . . . ." N.J.A.C. 7:36-25.13(d)(5). This too is a critical inquiry, given plaintiff's allegation that the lease renewal amounts to a donation of public property to Johnson in violation of the Donations Clause. It is undisputed that the township leased the property to Johnson for approximately thirty cents a day for his commercial activity while it charges a minimum of $50 a day to members of the public who wish to use a municipal park for some forms of recreation. Montgomery, N.J. Code §9-7.

Similarly, N.J.A.C. 7:36-25.13(d)(8)(iii) requires DEP, before approving a lease renewal, to determine whether the municipality "used compensation (payments, rentals or other consideration) it received under the prior lease . . . for purposes other than those allowed under" N.J.A.C. 7:36-25.13(e). That regulation requires all such income from a lease of funded parkland be used by the municipality "for operating, maintenance, or capital expenses related to its funded parkland or to its recreation program as a whole." N.J.A.C. 7:36-25.13(e). Although the DEP employee noted that the 2014 lease did not contain a provision memorializing the municipality's obligations under N.J.A.C. 7:36-

25.13(e), and requesting that such a provision be included in "the next form lease," it is clear that the lease renewal does not contain a provision to that effect. Nor does the record contain any evidence suggesting DEP determined that the municipality complied with this financial restriction during the term of the original lease.

We are reluctant to invalidate DEP's approval of the lease renewal without having given the agency an opportunity to create a record with respect to whether the lease renewal was reviewed and, if so, what that review entailed. We consider DEP to be a necessary and indispensable party within the meaning of R. 4:28-1(a), given that a decision in its absence with respect to the existence and validity of its approval of the lease renewal may impede its ability to protect its interest and leave the agency at substantial risk of inconsistent obligations. We, therefore, vacate the March 31, 2020 order and remand with the direction that DEP be joined as party for the purpose of creating an evidentiary record regarding the agency's review of the lease renewal agreement for the property.

In light of the remand and the unresolved nature of the validity of the lease renewal, to avoid an unnecessary constitutional adjudication, we refrain from deciding whether the trial court correctly concluded that the renewal, if properly approved by DEP, did not violate the Donations Clause. See In re Wheeler, 433

N.J. Super. 560, 596 (App. Div. 2013) ("the principle of 'constitutional avoidance' favors leaving constitutional issues that need not be decided for another day.").[8]

The March 31, 2020 order is vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] We agree, albeit for different reasons, with the trial court's conclusion that the provision of the agreement regarding roll-back taxes is not an impediment to renewing the lease. Roll-back taxes are assessed "[w]hen land which is in agricultural or horticultural use and is being valued, assessed and taxed [as farmland], is applied to a use other than agricultural or horticultural . . . ." N.J.S.A. 54:4-23.8. The tax applies to the two tax years immediately preceding the tax year in which the use of the property changed. Ibid. Pursuant to a 1999 amendment to the statute, "land which is valued, assessed and taxed [as farmland] and is acquired by . . . a local government unit . . . for recreation and conservation purposes shall not be subject to roll-back taxes." Ibid.; see also L. 1999, c. 152, §57. A "local government unit" under the statute means the same as that term is defined in N.J.S.A. 13:8C-3. Ibid. N.J.S.A. 13:8C-3 defines "local government unit" to include a municipality. The assessment of roll-back taxes on the property, therefore, would not be authorized based on change in the agricultural use of the property. The relevant provision of the contract, which is intended to avoid the imposition of roll-back taxes based on a change in use from agricultural, is, therefore, superfluous.

A-3518-19