**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0810-24

DEERFIELD HOLDINGS, LLC
and YESHIVA CHEMDAS
HATORAH,

     Plaintiffs-Respondents,

v.

LAKEWOOD TOWNSHIP
PLANNING BOARD,

     Defendant-Appellant,

and

LAKEWOOD TOWNSHIP
COMMITTEE,

     Defendant.

_____

     Argued September 16, 2025 – Decided February 13, 2026

     Before Judges Currier and Jablonski.

     On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0329-24.

John J. Jackson III argued the cause for appellant (John J. Jackson III & Associates, Attorneys at Law, attorneys; John J. Jackson III, of counsel and on the briefs; Jilian McLeer, on the briefs).

Donna M. Jennings argued the cause for respondents (Carluccio Leone Dimon Doyle Gutman & Petro, LLC and Wilentz, Goldman & Spitzer, PA, attorneys; John P. Doyle and Donna M. Jennings, of counsel and on the brief; Luke H. Policastro, on the brief).

PER CURIAM

Defendant, Lakewood Township Planning Board (the "Board"), appeals the trial court's decision granting summary judgment in favor of plaintiff, Yeshiva Chemdas Hatorah ("YCH"), in this prerogative writs action. The issue before us is narrow: Should YCH's development application be considered "complete" under the Municipal Land Use Law ("MLUL"), N.J.S.A. 40:55D-1 to -136, and the relevant Lakewood Township ordinance when the applicant has satisfied all checklist requirements, but the Board contends that additional information is needed to establish its jurisdiction to review the substantive merits of the application? On the record presented before us, we conclude the application was complete and affirm.

A-0810-24

I.

In March 2018, YCH applied for the development of a planned educational campus ("PEC") in Lakewood Township.[1] The PEC application (the "Campus Application") included plans to construct six dormitories, six townhomes, a gymnasium, a yeshiva with related site improvements, and parking.

In April, Ally Morris ("Morris"), the Board administrator, advised YCH its request was missing certain components. Specifically, the application lacked proof of the school's accreditation and a topographic survey. A few weeks later, YCH provided site plans, architectural drawings, and the topographic survey, but it did not include any accreditation information. Nevertheless, Morris later wrote to YCH stating "[t]he revised plans satisfactorily address the comments in my administrative review letter" and that "[t]he subject application has been scheduled for a Plan Review Meeting on Tuesday June 5, 2018."

In July 2018, Lakewood amended its zoning ordinance to add "Section J" that permitted applicants who had existing "complete" PEC applications to

---

[1] Deerfield Holdings, LLC is the owner of the property where the educational campus was planned to be constructed. It did not participate in the planning board application other than verifying its ownership of the property.

A-0810-24

pursue residential use of a tract rather than one restricted to educational activity:

> In all Residential Zoning districts, any tract for which a complete application for a [PEC] has been filed with the Lakewood Planning Board, in compliance with Section 18-902 H 1 (g), re-approval for development of that tract shall be conditionally permitted in accordance with the provisions of the R-7.5 (Residential) Land Use District. Such re-approval shall be subject to all of the following conditions:
>
> > 1. Submission and approval of a complete development application to the Lakewood Planning Board based on the provisions of the R-7.5 (Residential) Land Use District, Section 18-902 G.
> >
> > 2. A complete application for a [PEC] in accordance with Section 18-902 [H 1 (g)] must have been submitted prior to the adoption of this ordinance.
> >
> > 3. No development of any portion of the [PEC] may have been commenced at or before the time of adoption of this ordinance . . . .
>
> [Lakewood, N.J., Ordinance 18-900J (July 12, 2018)] (the "Ordinance").

The Plan Review meeting took place on September 4, 2018. Notes from that meeting list various next steps to be taken and other "[i]tems required to

be considered for public hearing." The Board contends that YCH never satisfied those next steps. YCH does not refute that claim.

For approximately a year and a half after that meeting, the Board contends YCH made no progress to develop its project. In March 2020, and intending to "purge unresolved applications," Morris contacted YCH and asked it to advise the Board of its "future intentions for this application." Morris wrote that "[i]t has been determined that your project has been [on] hold as per your inaction since September 4, 2018, and has not yet been approved or denied by the Board." Through counsel, YCH advised it was "addressing those items in the . . . review letter" and would be "providing additional submission documents in the near future." The Board never received any additional documents from YCH, and consequently removed the Campus Application from its active docket.

In November 2021, YCH submitted a revised plan under the Ordinance to develop the property for residential use. This Residential Application envisioned the development of 130 new lots for sixty-two duplex structures, one single-family dwelling, four parking lots, and one lot for a house of worship (the "Residential Application"). YCH sought preliminary and final major subdivision approval .

5

In July 2022, the Board's engineer reviewed the Residential Application and advised the Board "[s]ince a complete application for this tract was submitted prior to July 18, 2018," the site would be controlled by the standards established in the Ordinance. A hearing on the application began on September 6, 2022.

As a preliminary matter, the Board addressed an objection to the Residential Application raised by Jan Meyer, Esq., counsel for a homeowner's association organized to oppose YCH's proposal. During his remarks to the Board, Meyer generally identified what he termed the "threshold issue" and specifically whether YCH's original Campus Application was valid. He also questioned whether the Campus Application was "complete."

Board members voiced concerns about whether the Residential Application was submitted in good faith, whether it satisfied the requirements for an educational campus, and how many similar cases like it might exist. YCH's attorney acknowledged that, although the Campus Application never proceeded to a public hearing before the Board, an application was submitted and a review meeting was held. Brian Flannery, YCH's engineer and planner, testified that the Campus Application was "deemed complete" by the Board

6

secretary. Notably, Morris also confirmed that the application was "deemed completed."

During its discussion, the Board noted its understanding that the Ordinance was originally intended to allow conditional approval only to PEC applications that had been approved, not merely completed, and expressed disapproval over changes in the Ordinance's wording. The Board also voiced concerns about the potential for the process to be "abused" to facilitate higher-density zoning, contrary to the Ordinance's original intent. Some members suggested that the application may have been submitted as a pretext to obtain high-density housing in the area.

Ultimately, the Board determined that it needed additional information regarding the history of the application, briefing from the parties as to what constitutes a complete application, and testimony from YCH's rabbi to clarify the project's purpose and the reasons for its apparent delay. The application was adjourned to a future meeting.

The Board reconvened on December 6, 2022. Early in those proceedings, the Board's attorney focused the Board on a "threshold issue that pertains to [the Board's jurisdiction]." Counsel noted the Ordinance requires a "reapproval for development of that tract shall be conditionally permitted in

A-0810-24

accordance with the provisions of [the pertinent] residential land use district." The Board's attorney then framed the issue to be addressed as whether the "Board can make a threshold determination of jurisdiction." Ultimately, the Board concluded summarily it lacked jurisdiction to consider the matter based on the "totality" of the facts presented at that meeting.

In its resolution, the Board later explained:

> The Board finds that it does not have jurisdiction to hear the merits of the application and thus rejects jurisdiction of this application. The Board bases this conclusion on the fact that while the Board Administrator's correspondence dated April 19, 2018[,] indicates that all comments in her initial administrative review letter were "satisfactorily addressed[,"] it did not specifically state that the application had been deemed complete. Further, when the matter did proceed to a plan review meeting in September of 2018, there was a memorandum produced stating what was needed from the applicant in order to be deemed complete to go to a public hearing. The applicant never supplied the Board with that information documentation, and never proceeded to a public hearing. The Board finds that, based on these facts and circumstances, a completed application was never submitted to the Board prior to the adoption of the Ordinance at issue. The Board further finds that [the Campus Application] was never approved by the Board and thus is not eligible for "re-approval" under Lakewood Township Ordinance 2018-35. [Lakewood, N.J., Ordinance 2018-35 (July 12, 2018).] Therefore, the proposed use is not a conditionally permitted use in the zone, which necessitates a use variance from the Zoning Board.

In essence, the Board declined to hear YCH's Residential Application because it concluded that the PEC was neither complete nor could it be considered complete because it did not include the accreditation information.

After the Board denied YCH's motion for reconsideration, plaintiff initiated an action in lieu of prerogative writs, asserting that the Board had incorrectly refused to consider its application on the grounds that it lacked jurisdiction. Subsequently, plaintiff moved for summary judgment.

In a written opinion, the trial court granted plaintiff's application and ruled its Campus Application was complete and the Ordinance only required a complete PEC application for the Residential Application to be considered. It further concluded defendant's action not to consider the application was arbitrary, capricious, and unreasonable. The trial judge, however, did not grant plaintiff's additional request to approve the Residential Application automatically under N.J.S.A. 40:55D-48(c). Consequently, the trial court remanded the application to the Board with instructions to consider the Residential Application substantively.

The Board appealed and argued the trial court erred when it made its ruling because summary judgment was not the appropriate procedural mechanism to resolve the disputed issues presented in this prerogative writs

action. Substantively, the Board also contended that genuine issues of material fact remain regarding whether YCH's application was "complete" for purposes of a PEC given YCH did not obtain the necessary accreditation. The Board also disputed the interpretation of the term "re-approval" as used in the Ordinance. Finally, the Board maintained its decision to decline to consider the application was not arbitrary, capricious, or unreasonable, and should therefore be upheld.

## II.

## A.

Because this appeal arises from the trial court's entry of summary judgment, our review is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); R. 4:46-2(c). Similarly, we review the Board's interpretation of the Ordinance de novo and, therefore, afford no deference to its legal conclusions. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 559 (2018).

## B.

The Board initially argues that summary judgment was improperly used to resolve the central legal question in this prerogative writs action. We disagree.

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A genuine issue of fact exists "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

Although the evidence must be viewed in the light most favorable to the non-moving party, summary judgment cannot be denied simply because the non-movant demonstrates the existence of a disputed fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540-41 (1995). Denial is only proper when the evidence is of such quality and quantity that reasonable minds could return a finding in favor of the party opposing the motion. Id. at 540.

Since an exclusively legal issue is presented here, summary judgment is an appropriate procedural vehicle to address it. See, e.g., D'Anastasio Corp. v. Twp. of Pilesgrove, 387 N.J. Super. 241, 245 (App. Div. 2009) (prerogative writ complaints presenting purely legal issues can be decided by summary judgment); Willoughby v. Planning Bd. of Twp. of Deptford, 306 N.J. Super.

A-0810-24

266, 275 (App. Div. 1997) ("[W]here a prerogative writ action challenges governmental action which is not based on an administrative record developed in a quasi-judicial hearing or seeks performance of a ministerial duty, the usual procedures for the disposition of civil actions, including summary judgment practice, may be employed.").

Here, the material facts are undisputed, and the parties only disagree as to their legal significance. Both parties acknowledge that Morris sent the April 19, 2018, letter and do not dispute its contents. Their disagreement centers on the legal effect of this correspondence, specifically regarding whether YCH's application was considered "complete." The Board's claim that the application was incomplete due to YCH's failure to submit proof of accreditation presents a legal question requiring the court to decide whether, in light of Morris's confirmation, the application sufficiently addressed her concerns. Therefore, we find no error in the trial court's decision to review the application under the summary judgment standard.

C.

Next, the Board contends that there was a genuine issue of material fact regarding whether YCH submitted a complete application for a PEC, specifically asserting that YCH failed to obtain the necessary accreditation

from the Office of the Secretary of Higher Education of the State of New Jersey, as required for designation as a PEC under Lakewood, N.J. Ordinance § 18-200 (July 14, 2005). YCH, however, argues that the Ordinance's plain language allows an applicant to submit a complete application to develop a PEC before filing its Residential Application under the Ordinance. After examining the relevant definitions and operative provisions within Lakewood's ordinances, the trial court found YCH had submitted a complete application to the Board. We concur with this conclusion.

The MLUL defines how and when a developer's site plan application becomes "complete." A development application

> <u>shall be complete</u> for purposes of commencing the applicable time period for action by a municipal agency, <u>when so certified by the municipal agency or its authorized committee or designee</u>. In the event that the agency, committee or designee does not certify the application to be complete within 45 days of the date of its submission, the application shall be deemed complete upon the expiration of the 45-day period for purposes of commencing the applicable time period, unless: a. the application lacks information indicated on a checklist adopted by ordinance and provided to the applicant; and b. the municipal agency or its authorized committee or designee has notified the applicant, in writing, of the deficiencies in the application within 45 days of submission of the application . . . . The municipal agency may subsequently require correction of any information found to be in error and submission of additional

A-0810-24

information not specified in the ordinance or any revisions in the accompanying documents, as are reasonably necessary to make an informed decision as to whether the requirements necessary for approval of the application for development have been met. <u>The application shall not be deemed incomplete for lack of any such additional information or any revisions in the accompanying documents so required by the municipal agency</u>.

[N.J.S.A. 40:55D-10.3 (emphasis added).]

Similarly, an application is considered "complete" according to the Lakewood Unified Development Ordinance when all escrow deposits have been paid and all checklist requirements have been satisfied. Lakewood, N.J. Ordinance § 18-200 (July 14, 2005). In this case, YCH did not submit the required certification evidencing accreditation. However, as the trial court correctly recognized, the MLUL expressly prohibits deeming an application incomplete due to the absence of additional information not specified on the municipal checklist. <u>See</u> N.J.S.A. 40:55D-10.3. Furthermore, both parties agree that Morris deemed the application complete without requesting proof of accreditation.

Therefore, since the checklist requirements were met and the procedural obligations for the application were fulfilled, the strict provisions and plain

language of the MLUL supports the trial court's determination that the application is complete.

We affirm the trial court's decision that the Campus Application was complete and to remand the case to the Board to consider substantively the Residential Application in light of that determination.

We find the parties' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0810-24